# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

DARRYL DONNELL BOWERS,

    Petitioner,

v.                                    Case No. 8:18-cv-2126-KKM-AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____/

## ORDER

Darryl Donnell Bowers, a Florida prisoner, filed a pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging his state court conviction. (Doc. 1). Having considered the petition (*id.*), Bowers's supplement (Doc. 4), Respondent's opposition to the petition as time-barred (Doc. 16), Bowers's counseled amended reply (Doc. 26), and Respondent's sur-reply (Doc. 27), the Court orders that the petition is dismissed as untimely. Furthermore, a certificate of appealability is not warranted.

## I. BACKGROUND

A jury convicted Bowers of burglary of a dwelling, burglary of a structure, and grand theft. (Doc. 17-2, Ex. 1, Vol. 1, doc. pp. 79-80).[1] The trial court sentenced him

---

[1] It appears that the court did not adjudicate Bowers guilty of count two, burglary of a structure, or impose sentence on that count. A note on the sentencing documents states, "Ct. 2 – No Sentence, No Adj. – Double Jeopardy (Ct. 1)." (Doc. 17-2, Vol. 2, appellate record p. 175).

to a total term of 30 years in prison as a habitual felony offender. (Doc. 17-2, Ex. 1, Vol. 2, appellate record pp. 166-75). The state appellate court per curiam affirmed Bowers's convictions and sentences. (Doc. 17-3, Ex. 3). Bowers's many state court petitions and motions seeking collateral relief were denied. (*See* Docs. 17-3, 17-4, & 17-5).

Bowers filed his § 2254 petition pro se. After Respondent filed a limited response opposing the petition as time-barred, the Court appointed counsel to represent Bowers. (Docs. 18, 19). Through counsel, Bowers replied to the response, asserting that his mental cognitive disorder prevented him from timely filing his federal petition. (Doc. 26). The reply asserts that Bowers suffered a head injury in 2000 that has caused him to be unable to comply with the one-year statute of limitations due to reduced mental functioning. *Id.*

## II. TIMELINESS ANALYSIS

### A. One-Year Statute of Limitations under 28 U.S.C. § 2244(d)(1)

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal habeas petitioner has a one-year period to file a § 2254 petition. This period begins running on the later of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). It is tolled for the time that a "properly filed application for State post-conviction or other collateral review" is pending in state court. 28 U.S.C. § 2244(d)(2).

Respondent argues that Bowers's petition is untimely under § 2244(d)(1)(A), and Bowers does not dispute that his petition is untimely. Bowers's direct appeal was affirmed on April 15, 2009, (Doc. 17-3, Ex. 3), and he had 90 days to petition the U.S. Supreme Court for a writ of certiorari. *See Bond v. Moore*, 309 F.3d 770 (11th Cir. 2002). Bowers's one-year limitations period thus began running on July 15, 2009, after the expiration of this 90-day window.

After 244 days of untolled time elapsed, Bowers filed a "motion for rehearing" in the state circuit court on March 16, 2010. (Doc. 17-3, Ex. 4). On May 6, 2010, the state court struck the motion as facially insufficient because it failed to identify which prior matter Bowers wanted the court to rehear. (Doc. 17-3, Ex. 5). The Court concludes that this motion was "properly filed" for purposes of tolling under § 2244(d)(2). "[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (emphasis in original) (footnote omitted). While the state court found the motion facially insufficient, the state court did not reject the motion as untimely or for failure to comply with filing requirements. (Doc. 17-3, Ex. 5).

By the time the state court struck the motion for rehearing, Bowers had filed his initial motion for postconviction relief under Rule 3.850 on April 12, 2010. (Doc. 17-3, Ex. 6). Bowers subsequently filed numerous amendments; ultimately, the state court

3

entered a final order denying postconviction relief on April 30, 2013. (Doc. 17-3, Exs. 11, 12; Doc. 17-4, Exs. 26, 27, 31, 35, 37, 40-42, 44-47, 49). While Bowers amended his Rule 3.850 motion for postconviction relief during the timeframe of June 2010 to November 2012, he also filed numerous other state court motions, including motions to correct sentence, motions for counsel, motions for rehearing, motions to suppress, motions for counsel, motions opposing habitual felony offender sentencing, and a motion to discharge, and a motion to mitigate or reduce his sentence. These motions also proved unsuccessful. (Doc. 17-3, Exs. 8-10, 13-19, 21-24; Doc. 17-4, Exs. 28-34, 38, 39, 41).

Bowers did not appeal the denial of postconviction relief subsequent to the April 2013 order, although his limitations period continued to toll for the 30-day period to file an appeal. *See Cramer v. Sec'y, Dep't of Corr.*, 461 F.3d 1380, 1383-84 (11th Cir. 2006) (holding that the time in which a petitioner may file an appeal from the denial of a motion for collateral relief tolls the limitations period). Before that period expired, Bowers filed a motion for rehearing, and a motion to correct sentence on May 8, 2013. (Doc. 17-4, Exs. 51, 52). These motions were stricken in orders entered on May 15, 2013. (Doc. 17-4, Ex. 54; Doc. 17-5, Ex. 55). Bowers did not appeal. After expiration of the 30-day period to file a notice of appeal, Bowers's federal limitations clock began to run again on June 15, 2013.

Bowers had 121 days remaining in the limitations period, making his § 2254 petition due on or before October 15, 2013.[2] Bowers did not file any additional tolling applications before this date. His next state court paper, a letter construed as a motion for release, was not filed until December 12, 2013. (Doc. 17-5, Exs. 56 & 57). As a result, Bowers's § 2254 petition, filed on August 17, 2018, is untimely under § 2244(d)(1)(A).

### B. Equitable Tolling

Because the one-year limitations period is not a jurisdictional bar, it "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner can obtain equitable tolling only if he "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). A petitioner must "show a causal connection between the alleged extraordinary circumstances and the late filing of the petition." *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011).

Because this is a "difficult burden" to meet, the Eleventh Circuit "has rejected most claims for equitable tolling." *Diaz v. Sec'y for Dep't of Corr.*, 362 F.3d 698, 701 (11th Cir. 2004); *see also Johnson v. United States*, 340 F.3d 1219, 1226 (11th Cir. 2003)

---

[2] The 121st day was Sunday, October 13, 2013, and the next day, Monday, October 14, 2013, was Columbus Day. Therefore, Bowers had until Tuesday, October 15, 2013, to file his § 2254 petition. *See* Fed. R. Civ. P. 6(a)(1)(C), (a)(6)(A).

("[E]quitable tolling applies only in truly extraordinary circumstances."); *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) ("Equitable tolling is an extraordinary remedy which is typically applied sparingly."). The applicability of equitable tolling depends on a case's particular facts and circumstances. *See Knight v. Schofield*, 292 F.3d 709, 711 (11th Cir. 2002) (stating that when assessing equitable tolling, "[e]ach case turns on its own facts."). Further, "[t]he burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner" and "[m]ere conclusory allegations are insufficient to raise the issue of equitable tolling." *San Martin*, 633 F.3d at 1268.

A petitioner's mental impairment may warrant equitable tolling if a petitioner establishes a causal connection between his mental incapacity and the late filing of the petition. *See Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009) (explaining that a petitioner's alleged mental impairment "is not *per se* a reason to toll a statute of limitations" but rather "must have affected the petitioner's ability to file a timely habeas petition"); *see also Lawrence v. Florida*, 421 F.3d 1221, 1226-27 (11th Cir. 2005) (rejecting a claim for equitable tolling based on mental incapacity when the petitioner failed to "establish a causal connection between his alleged mental incapacity and his ability to file a timely petition."). In *Hunter v. Ferrell*, the primary case upon which Bowers relies, the petitioner there argued (without dispute by the state) that his state post-conviction petitions were filed through the assistance of prison law clerks because he "could not manage his affairs or understand his legal rights and act upon them;" that his § 2254

6

petition was prepared by a prison legal assistant; and that a competency report showed that he was "diagnosed with chronic, irreversible mental retardation" that "moderately to severely impairs his judgment." 587 F.3d at 1306, 1308–09. Notably, the Eleventh Circuit remanded for further evidentiary development to determine if the mental retardation caused the late filing. *Id.* at 1309–10.

Bowers has submitted medical records from the Department of Veterans' Affairs that appear to have been generated from 2000 to 2007 (Docs. 8 and 10), as well as an exhibit to his petition addressing his health history. (Doc. 1-1). Bowers further represents that he takes medication that affects his mental capacity, and the last page of the exhibits attached to his petition is a signed—but undated—consent to receive psychotropic medication from the Department of Corrections. (Doc. 1-1, p. 44).

Bowers's counseled reply addresses several conclusions from the medical records. The reply explains that Bowers was involved in a motor vehicle accident on February 1, 2000, which resulted in a traumatic brain injury. (Doc. 8, pp. 205, 213; Doc. 26, p. 1). Dr. Glenn Curtiss, a clinical neuropsychologist, evaluated Bowers on May 16, 2000. (Doc. 8, p. 257; Doc. 26, p. 2). Dr. Curtiss reported that while Bowers's "premorbid level of intellectual and cognitive ability is estimated as within the Average range," at the time of evaluation, Bowers's visual analytic and constructive abilities were deficient; his retention and recall of visual material was at the low end of the average range; he performed deficiently on "Similarities and Information subtests"; and he

exhibited response patterns on one test consistent with right frontal brain injury. (Doc. 8, p. 259-61; Doc. 26, p. 2).

The reply also explains that, on June 8, 2001, Speech Pathology Consultant Robin Rodriguez noted that Bowers's "reading comprehension is impaired" and that this impairment "is suspected to be at least partially due to memory deficits." (Doc. 8, pp. 187-88; Doc. 26, p. 2). As further addressed, on December 19, 2003, Health Science Specialist James W. Payne noted that Bowers was "very difficult to interview, as he had TBI and his memory is impaired," and concluded that Bowers was "unlikely to benefit from intensive tx, due to his cognitive impairment." (Doc. 8, pp. 171-72; Doc. 26, p. 2).

Bowers underwent group therapy treatment at a veterans' clinic in 2006. (Doc. 26, p. 3). The reply summarizes reports from the group therapy sessions, which indicate that Bowers's memory and cognition may be affected by his brain injury; that he was disabled due to his cognitive disorder; that his abilities to think, process and store information, and solve problems were compromised; that he did not stay on topic during group discussions; that he experienced difficulty with written assignments; and that his insight was compromised by his cognitive disorder and was not expected to improve significantly. (Doc. 8, pp. 95, 97-99, 109, 124-25, 128-30, 148; Doc. 26, p. 3).

Bowers argues that "the extraordinary circumstance of his documented, undisputed, substantial mental cognitive disorder stood in the way and prevented him from filing *pro se*, a timely 28 U.S.C. § 2254 petition within the one-year limitations period." (Doc. 26, pp. 3-4). Bowers contends that he has made the requisite showing of

8

a causal connection between his mental impairment and his failure to timely file the petition and that his medical records prove that his claims are more than "conclusory assertions." (*Id.*, p. 5).

Respondent counters that Bowers has shown neither due diligence nor extraordinary circumstances warranting equitable tolling. Respondent argues that Bowers has failed to show a causal connection between any mental impairment and the late filing of his § 2254 petition. As evidence, Respondent points to Bowers's numerous filings in state court seeking postconviction relief as proof that he was capable of filing motions, notices, and correspondence during relevant time periods.

The Court agrees that Bowers has failed to establish entitlement to equitable tolling, even with court-appointed counsel. First, Bowers has not demonstrated that he exercised due diligence in pursuing the timely filing of his federal habeas petition. *See Holland*, 560 U.S. at 649. Nowhere in his counseled reply does Bowers point to efforts that he undertook to discern the due date of his federal petition, to meet that deadline, or even to demonstrate an interest in pursuing a federal habeas petition before the deadline. The Eleventh Circuit has found relevant for an analysis of due diligence, for example, that a petitioner wrote thirteen letters to legal counsel (including demands for a federal habeas petition), called counsel on the phone, and expressed to counsel a desire "to go and litigate in the federal court." *Brown v. Sec'y, DOC*, 750 F. App'x 915, 937 (11th Cir. 2018) (reversing the district court's finding of no due diligence and pointing to the above actions undertaken by petitioner); *see also Melson v. Ala. Dep't of Corr.*, 713 F.3d

9

1086, 1089-90 (11th Cir. 2013) (holding that a petitioner failed to exercise reasonable diligence when he "took no independent steps to ensure that his federal habeas petition was timely filed"); *Downs v. McNeil*, 520 F.3d 1311, 1323 (11th Cir. 2008) (concluding that a petitioner's allegations, if true, showed he exercised due diligence by writing multiple letters to counsel "to express concern over the running of the AEDPA filing period and to urge the filing of his federal habeas petition or an additional state court pleading" and by attempting to assist his attorneys in drafting his federal petition).

Next, Bowers does not show that exceptional circumstances prevented him from timely filing the petition. While Bowers has provided documentation detailing his mental condition which the Court acknowledges show he has suffered from some head injury resulting in reduced mental functioning, he has not demonstrated that his mental impairment *caused* him to miss the filing deadline to warrant equitable tolling. *See Hunter*, 587 F.3d at 1308. That is his burden. And his counseled reply does not put forth any argument, much less evidence, showing such causation. It relies simply on speculation, which is insufficient. And unlike other situations, Bowers was able to prepare and file "his own habeas petition pro se," thereby undercutting the notion that his mental impairment precipitated the untimeliness or somehow incapacitated his efforts entirely. *Compare Brown*, 750 F. App'x at 938. Bowers simply fails to show a "causal connection" between the mental impairment and untimeliness.

As described above, Bowers filed many petitions and motions in state court before his habeas deadline expired in October 2013. In addition, Bowers continued to

file petitions and motions in state court after this deadline passed. (Doc. 17-5, Exs. 56, 58, 60, 62, 67, 69, 72, 74, 79). To be sure, Bowers's mental conditions (which the Court accepts at this juncture as they are not currently challenged by Respondent) existed prior to the initiation of the state criminal case in 2007, yet he routinely accessed the court system and filed papers in state court following his conviction. Importantly, Bowers does not explain (or support with credible evidence) why any mental handicap impaired his ability to file a timely federal petition while he nonetheless ardently pursued state court remedies seemingly without inhibition, albeit they proved unsuccessful. Indeed, he never even contends that he filed the state court pleadings with the assistance of prison law clerks, as the petitioner did in *Hunter*, which is Bowers's primary supporting citation. *Compare* 587 F.3d at 1306, 1308–09.

Because Bowers has established neither due diligence nor a causal connection between his mental condition and the late filing of his habeas petition, the Court finds that Bowers has not met his burden of establishing entitlement to equitable tolling.[3] *See, e.g., Spears v. Warden*, 605 F. App'x 900, 905 (11th Cir. 2015) (affirming the rejection of petitioner's equitable tolling argument and stating, "the record indicates that Spears has some history of mental-health issues and medication, but . . . Spears has not explained

---

[3] Bowers does not argue or demonstrate that the Court can consider his petition based on actual innocence. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (holding that actual innocence, if proved, is a gateway through which a habeas petitioner may obtain review of his untimely petition).

how his mental-health issues or medication, apart from the drug-induced prison transfers, affected his ability to file a timely petition"); *Fox v. McNeil*, 373 F. App'x 32, 34 (11th Cir. 2010) ("Fox has . . . failed to establish a causal link between his claims of mental incompetence and the untimely filing of his federal habeas petition. Accordingly, we find that Fox has not met his burden to prove that equitable tolling is appropriate[.]"). Bowers's petition must be dismissed as untimely.[4]

## III. **CERTIFICATE OF APPEALABILITY**

Bowers is not entitled to a certificate of appealability (COA). A prisoner seeking a writ of habeas corpus has no absolute entitlement to COA. 28 U.S.C. § 2253(c)(1). The district court or circuit court must issue a COA. *Id.* To obtain one Bowers must show that reasonable jurists would debate both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petition is time-barred and not entitled to equitable tolling, Bowers cannot satisfy the second prong of the *Slack* test. As Bowers is not entitled to a COA, he is not entitled to appeal in forma pauperis.

---

[4] Bowers's reply refers to, but does not expressly ask for, an evidentiary hearing. The Court finds that an evidentiary hearing on the question of equitable tolling is not warranted. *See Spears*, 605 F. App'x at 905 ("[A]n evidentiary hearing [on equitable tolling] is not required where no basis exists to believe that further inquiry would help the petitioner prove entitlement to equitable tolling.").